**The BLACK & DECKER MANUFACTURING COMPANY, Appellant,**

v.

**EVER–READY APPLIANCE MFG. CO., Appellee.**

**No. 81–1851.**

United States Court of Appeals, Eighth Circuit.

Submitted April 12, 1982.

Decided July 14, 1982.

William L. Anthony, Jr., Harness, Dickey & Pierce, Birmingham, Mich., Charles B. Haverstock, Haverstock, Garrett & Roberts, St. Louis, Mo., for appellant.

McPherson D. Moore, Rogers, Eilers & Howell, St. Louis, Mo., for appellee.

Before ARNOLD, Circuit Judge, STEPHENSON, Senior Circuit Judge, and HANSON,[*] Senior District Judge.

HANSON, Senior District Judge.

Black & Decker Manufacturing Co. brought this action alleging that Ever-Ready Appliance Manufacturing Co. infringed upon its patent and engaged in unfair competition in the marketing and sale of a two-step foldable step stool. Following a bench trial on these issues, the district court[1] held that Black & Decker's patent on its step stool was invalid because it was obvious in light of the prior art; that even if the patent were valid, there was no infringement by Ever-Ready; and that there was no violation under section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), regarding trade dress.[2] Black & Decker appeals from the judgment entered in favor of Ever-Ready. We affirm.

I.

The lower court's findings disclose that Ever-Ready and Black & Decker's development of their respective step stools proceeded along separate courses which did not converge until each company introduced its respective product at the Chicago Hardware Show in August 1979.

Inventors Irving Schaffer and Elliot Siff are mechanical engineers who applied for a patent on their two-step foldable step stool in 1975.[3] Originally, the patent office ex-

---

[*] The Honorable William C. Hanson, Senior United States District Judge for the Northern and Southern Districts of Iowa, sitting by designation.

[1] The Honorable John F. Nangle, United States District Judge for the Eastern District of Missouri.

[2] In addition, there was a state law claim of unfair competition; Judge Nangle held that the proof requirements were the same as the federal claim and thus not established.

[3] The step stool is described as follows in the lower court's memorandum opinion:

The step stool in question is composed primarily of two sets of inner and outer frame members, five cross braces, and two steps. The inner frame members are parallel to each other and connected to each other via three cross braces, and the parallel outer frame members are likewise connected to each other via two cross braces. The inner frame members are pivotally connected to the respective outer frame members to form an X-frame. One step is situated above the piv-

aminer rejected all but one of the inventors' nine claims in their application as obvious in light of the prior art. Schaffer and Siff thereafter submitted their application (without amendment) for reconsideration. The basic thrust of their argument for reconsideration was that the prior art failed to disclose any device which folded completely flat. The patent office examiner accepted the argument and issued the patent on December 28, 1976. The inventors assigned the patent to Marlene Designs, Inc., which manufactured the step stool for two years before assigning the patent to Black & Decker in 1978. The Marlene Designs stool was copied by other companies, one of which was Action Products, which came out with the "Stor 'n Step." In April 1979, Tony Ribaudo, a mechanical engineer and a vice president and manager of Ever-Ready Appliance, received a Stor 'n Step from his Chicago marketing representative. Ribaudo, in collaboration with an independent contractor who had previously worked on developing other Ever-Ready products, developed the prototype for the "Ready-Step" using the Stor 'n Step as a model. Simultaneously, Black & Decker was redesigning the Marlene Designs step stool into a stool that was to be marketed as the "Stowaway." Both Ever-Ready and Black & Decker unveiled their new step stools at the Chicago Hardware Show in August 1979. The lower court found that neither company had seen the other's product until this hardware show. All the same, the stools are nearly identical in appearance. Both are almond in color with black nonskid treads on the steps; both have black plastic caps on the ends of the X-frame supports; both have a black plastic handle on the back of the top step for carrying and hanging the folded stool; and both have a latch on the right side of the top step which serves to lock the stool in the open position. After Ever-Ready began marketing the Ready-Step in late 1979 and early 1980, Black & Decker filed this suit.

## II.

■ First, we consider Black & Decker's argument that the district court erred in invalidating the patent. While it is clear that a patent is presumed valid, 35 U.S.C. § 282, "[t]he presumption of validity * * * is weakened, if not completely destroyed, by proof of pertinent prior nonconsidered art." *Ralston Purina Co. v. General Foods Corp.*, 442 F.2d 389, 390 (8th Cir. 1971). In this case, the district court held that the patent office failed to consider the Henry Patent[4] in its review of the prior art, that this patent was relevant, and that the presumption of validity was thus weakened. Black & Decker argues that the Henry Patent is not relevant prior art because it describes a foldable stool that is to be used only as a

---

ot of the X-frame and the other is situated below the pivot. The rearward portion of the top step is pivotally connected to the upper cross brace of the outer frame members, and the rearward portion of the bottom step is pivotally connected to the middle cross brace of the inner frame members. The forward portion of the top step is connected to the upper cross brace of the inner frame members by a pin-and-slot connection, the cross brace acting as the pin and a slot being attached to the underside of the top step. The forward portion of the bottom step is similarly connected to the lower cross brace of the outer frame members.

When in an open position, the outer and inner frame members form an "X", and the steps are in a horizontal position. The "X" is skewed such that the steps exhibit a rise and run appropriate to a step stool. The pivot connecting the inner and outer frame members and the outer frame member cross braces are positioned off-center with respect to the outer frame members. When the stool is in a closed position, the inner frame members and the steps are disposed entirely within the planar volume of the outer frame members, which are one inch wide.

*Black & Decker Mfg. Co. v. Ever-Ready Appliance Mfg. Co.*, 518 F.Supp. 607, 608–09 (E.D. Mo.1981).

4. The district court found that the Henry Patent employs the same method as the patent-in-suit of connecting the platform to the frame members—a pivot connection to the outer frame members and a pin-and-slot connection to the inner frame members. The court also found that the folding stool described by the Henry Patent has a feature absent from the other considered prior art and shared by the patent-in-suit: it folds completely flat. *Black & Decker Mfg. Co. v. Ever-Ready Appliance Mfg. Co.*, supra, 518 F.Supp. at 610.

seat, whereas the Stowaway is a foldable stool that is to be used as a ladder. This argument misapprehends the meaning of "prior art." The definition adhered to in this circuit is that " 'prior art' may include not only earlier devices and publications but also similar devices whether or not in related areas to the patented device and with respect to a simple mechanical device utilizing universally known principles permits referring to the field of mechanics itself." *Skee-Trainer, Inc. v. Garelick Mfg. Co.*, 361 F.2d 895, 898 (8th Cir. 1966). Clearly the Henry Patent is relevant art under this definition; the court was correct in concluding that the presumption of validity had been weakened.

 The district court went on to hold the patent invalid because it is obvious in light of the prior art. A device is patentable if it possesses the characteristics of novelty, utility, and non-obviousness. 35 U.S.C. §§ 101, 102, 103. A patent may not be obtained

> if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.

35 U.S.C. § 103. In addressing the obviousness issue, the lower court was guided by familiar principles. While the question of obviousness is one of law, it "lends itself to several basic factual inquiries." *Graham v. John Deere Co.*, 383 U.S. 1, 17, 86 S.Ct. 684, 693, 15 L.Ed.2d 545 (1966). The court must determine the scope and content of the prior art, the differences between the prior art and the claims at issue, and the level of ordinary skill in the pertinent art. *Id.* In this case, the court, alluding to four prior patents, found that the step stool was composed of old and well-known elements and that "the only difference between the Henry Patent and the patent-in-suit is the addition of a second platform below the pivot of the X-frame, and the juggling of the geometry such that the rise and run are appropriate for a step stool." *Black & Decker*

*Manufacturing Co. v. Ever-Ready Appliance Manufacturing Co.*, 518 F.Supp. 607, 613 (E.D.Mo.1981). The court also found that because the step stool was a simple mechanical device using universally known elements and principles, the relevant prior art is the field of mechanics itself. *Id.* Based on the level of education and experience manifested by the inventors and by Ribaudo, the district court found that the level of ordinary skill in the art of mechanics in general, and in step stool design in particular, is high. These findings led the court to conclude, as a matter of law, that the patent-in-suit is obvious.

 Black & Decker argues that the lower court erred in finding that the ordinary level of skill in the pertinent art is high and thus the court arrived at an erroneous conclusion of law regarding the validity of the patent. This circuit does not mandate a strict technical approach to the fact-finding requirements of *Graham*, as long as it is apparent that the trial court grappled with the problems presented by *Graham*. *Contico International, Inc. v. Rubbermaid Commercial Products, Inc.*, 665 F.2d 820, 824 n.9 (8th Cir. 1981). Ribaudo testified at trial that he possessed ordinary skill in the art and the district court found that "there is no indication that they [Schaffer, Siff, and Ribaudo] are not typical." *Black & Decker Manufacturing Co. v. Ever-Ready Appliance Manufacturing Co., supra*, 518 F.Supp. at 614. It is apparent that the trial court grappled with the problem of the level of ordinary skill. Limiting our review, as we must, within the confines of Rule 52(a), Fed.R.Civ.P., we discern no clear error in the district court's finding in this regard.

 Black & Decker further argues that even presuming a high level of ordinary skill, *Graham* was misapplied because the prior art does not lead to a conclusion of obviousness. Our best response to this is referral to Judge Nangle's thorough analysis of the prior art in his memorandum opinion. *Black & Decker Manufacturing Co. v. Ever-Ready Appliance Manufacturing Co., supra*, 518 F.Supp. at 609–10, 613. We, therefore, hold that Judge Nangle's

conclusion of obviousness is correct. Because we affirm the conclusion that the patent is invalid as obvious, we do not reach the issue of whether the patent was infringed.

### III.

 The final matter we consider is Black & Decker's assertion that the district court erred in concluding that there was no violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), regarding trade dress. A cause of action is stated under section 43(a) when non-functional aspects of a product which have acquired a secondary meaning in the marketplace are copied by a competitor. *Truck Equipment Service Co. v. Fruehauf Corp.*, 536 F.2d 1210, 1215 (8th Cir.), *cert. denied*, 429 U.S. 861, 97 S.Ct. 164, 50 L.Ed.2d 139 (1976) ("TESCO"). Secondary meaning is established by long and exclusive use and advertising of a name, mark, or symbol which serves to identify the product and distinguish it from the products of others. *TESCO, supra*, 536 F.2d at 1219.

There is no secondary meaning established in this case—Black & Decker admits this. Nevertheless it urges us to adopt its theory of "secondary meaning in the making," under which the trade dress of the Stowaway would be deemed protectable by virtue of the substantial advertising outlay and marketing approach used by Black & Decker to promote the product. Such a theory focuses solely upon the intent and actions of the seller of the product to the exclusion of the consuming public; but the very essence of secondary meaning is the association in the mind of the public of particular aspects of trade dress with a particular product and producer. *See TESCO, supra*, 536 F.2d at 1219. We are directed to no case which actually applies Black & Decker's theory and we decline to adopt it.[5] Because we hold that no secondary meaning

exists, we need not address whether the district court erred in holding that the similar aspects of the Stowaway and the Ready-Step were functional and thus outside the protection of section 43(a) of the Lanham Act.

Accordingly, we affirm the judgment of the lower court.

---

5. We agree with Judge Nangle that the cases cited by Black & Decker in support of secondary meaning in the making all held that there was actual secondary meaning and any indication that secondary meaning in the making might be protectable is merely dicta. *See, e.g.*, *Orion Pictures Co. v. Dell Publishing Co.*, 471 F.Supp. 392 (S.D.N.Y.1979); *National Lampoon, Inc. v. American Broadcasting Co.*, 376 F.Supp. 733 (S.D.N.Y.), *aff'd*, 497 F.2d 1343 (2d Cir. 1974).