**DARDA INC. USA d/b/a Darda Toy Company and Helmut Darda, Plaintiffs,**

v.

**MAJORETTE TOYS (U.S.) INC. and Majorette S.A. France, Defendants.**

**No. 83–353–Civ.**

United States District Court, S.D. Florida.

Jan. 13, 1986.

Mark P. Stone, Eric Y. Munson, Parmelee, Bollinger & Bramblet, Stamford, Conn., Jack E. Dominik, Miami Lakes, Fla., for plaintiffs.

Gary Carman, Holland & Knight, Miami, Fla., Stephen Rubin, Holland & Knight, Washington, D.C., for defendants.

## MEMORANDUM OPINION INCLUDING FINDINGS OF FACT AND CONCLUSIONS OF LAW

ARONOVITZ, District Judge.

THIS CAUSE came on for a non-jury trial before the Court commencing Monday, November 18, 1985, and consumed the better part of seven (7) days. The Court received voluminous documentary evidence and heard the lengthy testimony of nine (9) expert and lay witnesses in addition to the arguments advanced by counsel for all parties on various pertinent matters. On December 17, 1985, after all parties were afforded the opportunity to submit supplemental trial memoranda and revised proposed findings of fact and conclusions of law, counsel presented closing arguments. The Court, having carefully considered all of the evidence, the pertinent portions of the record, the argument of counsel, the applicable law, and being otherwise fully advised in the premises, enters herein its Memorandum Opinion containing findings of fact and conclusions of law.

### The Nature of the Action

This is an action for patent infringement of United States Letters Patent Nos. *3,812,933* and *3,981,098* ("patents in suit") issued respectively on May 28, 1974, and September 21, 1976, to Helmut Darda ("Darda"). Both plaintiffs, Helmut Darda and Darda Inc. U.S.A. ("Darda (U.S.)"), the U.S. oral, exclusive licensee of Helmut Darda, sue *both* defendants Majorette Toys (U.S.) Inc. ("Majorette (U.S.)") and Majorette S.A. France ("Majorette (France)"). Majorette (France) is the parent corporation and holder of United States Patent No. 4,332,104 and Majorette (U.S.) is its subsidiary operating in the United States. Plaintiffs seek damages for infringement, treble damages, an injunction, and an award of costs and reasonable attorneys' fees.

*Majorette (U.S.)* has counterclaimed against *plaintiff Darda (U.S.)* for violations of the antitrust laws of the United States alleging that the patents in suit were fraudulently procured and/or are being enforced with knowledge of alleged invalidity. *Majorette (U.S.)* seeks damages, treble damages, costs and reasonable attorneys' fees. *Both Majorette (U.S.) and Majorette (France)* have counterclaimed against *both Darda (U.S.)* and *Darda* for a declaratory judgment of invalidity of the patents in suit. Majorette (U.S.) and Majorette (France) seek costs and reasonable attorneys' fees for defending the patent infringement action.

### Jurisdiction

This Court has federal jurisdiction for the patent infringement action pursuant to 28 U.S.C. § 1338(a), in that this action arises under an Act of Congress relating to patents; namely, 35 U.S.C. § 271 *et seq.* Furthermore, as to defendants Majorette (France) and Majorette (U.S.), this Court finds that it has jurisdiction as to both.

This Court has federal jurisdiction for the antitrust counterclaim of Majorette Toys (U.S.) pursuant to 28 U.S.C. § 1337(a), in that the counterclaim arises under section 2 of the Sherman Act, 15 U.S.C. § 2, for damages and injunctive relief provided by sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26.

This Court has federal jurisdiction for the counterclaims seeking declarations of patent invalidity pursuant to 28 U.S.C. § 1338(a) and 28 U.S.C. §§ 2201–2202, in that defendants seek a declaratory judgment under an Act of Congress relating to patents; namely, 35 U.S.C. § 1 *et seq.*

### Stipulated Facts

The following stipulated facts are those facts which the parties agree required no proof at trial of the instant cause. They were initially set forth in the Bilateral Pretrial Stipulation at Paragraph 5 on pages 4 through 9.

a) The Court has jurisdiction over Majorette (U.S.) and the subject matter of this action and the counterclaims.

b) Majorette (U.S.) is controlled by Majorette (France).

c) Until its sale to a third party in 1984, Darda (U.S.) was controlled by Helmut Darda.

d) Majorette (France) manufactured and provided to Majorette (U.S.) motorized toy vehicles containing bi-directionally wound spring motors, which Majorette (U.S.) has sold and distributed in the United States during the term of the patents in suit.

e) Majorette (France) knew that the motorized toy vehicles imported by Majorette (U.S.) were intended to be, and were, sold and distributed in the United States.

f) The motorized toy vehicles referred to in paragraphs (d) and (e) above infringe claims 1–4 and 6 of United States Patent No. 3,981,098, and claims 1–5 of United States Patent No. 3,812,933, if said claims of said patents are held to be valid and enforceable.

g) The motorized toy vehicles referred to in paragraphs (d) and (e) above do not infringe claims 13–28, 30–31, and 36–38 of United States Patent No. 3,812,933, and claims 11, 15–17, 19–20, and 22–45 of United States Patent No. 3,981,098.

h) Majorette (France) is the owner of United States Patent No. 4,332,104 (Ribas), issued on June 1, 1982.

i) The motorized toy vehicles that have been sold by Majorette (U.S.) in the United States are constructed in accordance with the embodiments disclosed and illustrated by Figures 5–9 of United States Patent No. 4,332,104, only the drive and winding transmissions are in reverse position in the actual motor.

j) Plaintiff Helmut Darda is the owner of the patents in suit.

k) Plaintiff Helmut Darda is chargeable with knowledge of the existence of one of the prior-art patents cited by defendants; namely, United States Patent No. 2,305,666 (Bolsey) at least as early as October 14, 1974.

l) Defendant Majorette (France) is chargeable with knowledge of the existence of both of the patents in suit, in that both patents in suit were cited in an Official Action of the U.S. Patent and Trademark Office dated September 30, 1980, with respect to the application which became United States Patent No. 4,332,104.

m) Defendant Majorette (U.S.) was made aware of the existence of both patents in suit at least as early as approximately January 12, 1983, the date upon which written notice was sent to Majorette (U.S.) by Eric Y. Munson, Esquire, attorney for plaintiffs.

n) Plaintiffs were made aware of defendants' position that claim 7 of the patents in suit inherently contradicts claims 1 of the patents in suit, and is therefore inoperative and unenforceable, by letter from Stephen Rubin, Esquire, attorney for defendants, to Eric Y. Munson, Esquire, attorney for plaintiffs, dated October 21, 1983.

o) Since the issuance of United States Patent No. 4,332,104, no action has been taken to reissue, reexamine, disclaim, correct, or cite any publications or patents to the United States Patent and Trademark Office with respect to one or more of the claims of the said patent.

p) Since the issuance of the patents in suit, no action has been taken to reissue, reexamine, disclaim, correct, or cite any publications or patents to the United States Patent and Trademark Office with respect to one or more of the claims of said patents.

q) No prior-art statement, other than the art of record, was ever filed by or on behalf of the applicant during the period when the applications which became the patents in suit were pending before the United States Patent and Trademark Office.

r) The only prior-art references cited by the patent examiner during the pendency of the application which became United States Patent No. 3,812,933 are the following:

(1) United States Patent No. 2,182,529 (Wyrick);

(2) United States Patent No. 3,216,529 (Lohr);

(3) British Patent No. 1,192,330 (Miura); and,

(4) United States Patent No. 3,393,771 (Lohr, *et al.*).

s) The only prior-art references cited by the patent examiner during the pendency of the application which became United States Patent No. 3,981,098 are the following:

(1) United States Patent No. 2,182,529 (Wyrick);

(2) United States Patent No. 3,221,446 (Keck);

(3) United States Patent No. 2,257,064 (Muller);

(4) British Patent No. 1,192,330 (Miura);

(5) German Patent No. 275,418 (Clark);

(6) German Patent No. 523,013 (Krauss); and,

(7) German Patent No. 655,878 (Muller).

t) At no time have the plaintiffs or their attorneys sought to inform the United States Patent and Trademark Office of the existence of United States Patent No. 2,305,666 (Bolsey) with respect to the patents in suit.

u) At no time have the defendants or their attorneys sought to inform the United States Patent and Trademark Office of the existence of United States Patent No. 2,305,666 (Bolsey) with respect to United States Patent No. 4,332,104.

v) There is no antecedent basis for the recitations "said gear wheels" (line 25), "other of said gear wheels" (line 28), "said output transmission" (lines 30–31), "said gear wheels" (line 32), or "said spring" (lines 32–33) in claim 6 of United States Patent No. 3,812,933.

w) Subsequent to May 28, 1974, no disclaimer or amendment of claim 6 of United States Patent No. 3,812,933 has been filed by or on behalf of the patentee in the United States Patent and Trademark Office.

x) There is no antecedent basis for the recitations "said gear wheels" (line 40), "other of said gear wheels" (line 43), "said output transmission" (lines 45–46), "said gear wheels" (line 47), or "said spring" (lines 47–48) in claim 21 of United States Patent No. 3,981,098.

y) Subsequent to September 21, 1976, no disclaimer or amendment of claim 21 of United States Patent No. 3,981,098 has been filed by or on behalf of the patentee in the United States Patent and Trademark Office.

z) Both the Majorette (U.S.) and Darda (U.S.) bi-directionally wound motorized toy cars are sold individually and as a part of track sets.

aa) Both the Majorette (U.S.) and Darda (U.S.) bi-directionally wound motorized toy cars and track sets are sold in interstate commerce and the relevant geographic market for such sales is the United States.

bb) In the sale of bi-directionally wound motorized toy cars and track sets, Majorette (U.S.) and Darda (U.S.) are, or have been, direct competitors.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

Following herewith are findings of fact and conclusions of law made by the Court after trial, closing argument and consideration of all post trial memoranda and submissions by the parties.

## I. PATENT VALIDITY

### A. *Findings of Fact*

1. The two patents in suit are directed to a mobile toy vehicle incorporating a bi-directionally spring wound motor, and a bi-directionally spring wound motor particularly adapted for use in a mobile toy vehicle [Plaintiffs' Exhibits 1 and 2]. The bi-directionally spring wound motor enables a child playing with the toy car to merely depress the car's chassis and wind the spring in both directions while rolling the cars' wheels back and forth. The moving back and forth on a supporting surface in

either direction winds the coil spring. Once the spring is wound, and the child releases the chassis, then the toy car shoots forward because the spring unloads.

2. The patent applications resulting in the patents in suit were prepared based on at least 23 working models [Plaintiffs' Exhibits 5-1 through 5-23] built by Helmut Darda himself over a time period of almost two years [Trial Transcript, pp. 117, 121]. Mr. Darda worked on the models on the average of three to four (3-4) days per week, during evenings, and over weekends [Trial Transcript, p. 147]. Mr. Darda spent about five hundred (500) hours in building and refining his models [Trial Transcript, p. 147].

3. Defendants' counsel concede that Mr. Darda is the inventor of each of the models identified as Plaintiffs' Exhibits 5-1 through 5-24 [Trial Transcript, p. 133], and that the models evidence that Mr. Darda has a high level of skill as a toy maker [Trial Transcript, p. 135].

4. At the time Mr. Darda made his inventions, he was aware of only mobile toy vehicles having uni-directionally spring wound motors which were windable by a key [Trial Transcript, p. 149]. One of the objects of Mr. Darda's inventions was to provide a toy vehicle having a bi-directionally spring wound motor which did not require use of a key [Plaintiffs' Exhibits 1 and 2]. Defendants' technical expert Dr. Benedict conceded that key wound toy vehicles are difficult for small children to manipulate. Upon questioning by the Court, Dr. Benedict testified as follows:

"Wasn't it a frequent occurrence that more often than not the child lost the key control by not being able to manipulate it and cause the wind-down to occur?
THE WITNESS: While it was being held?
THE COURT: Yes.
THE WITNESS: Yes sir that did occur, absolutely."

[Trial Transcript, p. 404]

5. Although the defendants contend that the two patents in suit are invalid as being obvious over 23 alleged prior-art references [Joint Pretrial Stipulation, pp. 11, 12], they have only offered expert testimony with respect to three; namely, U.S.Pat. No. 2,305,666 (*Bolsey*), U.S.Pat. No. 3,541,725 (*Miura*), and U.S.Pat. No. 2,182,529 (*Wyrick*) [Trial Transcript, pp. 368, 395]. Both the *Wyrick* and *Miura* patents were considered by the Patent Office during its examination of each of the two applications which resulted in the patents in suit, and the applications were determined to be patentable over *Wyrick* and *Miura* by two different Patent Examiners. [Trial Transcript, p. 368; Plaintiffs' Exhibits 1 and 2].

6. The *Wyrick* and *Miura* patents, which were considered by the Patent Office, were the closest prior art to the subject matter of the two patents in suit. Defendants' technical expert Dr. Benedict testified that he believed himself to be capable of constructing a bi-directionally wound toy vehicle, at least through hindsight, based on only the disclosures of the *Wyrick* and *Miura* patents, which are each directed to uni-directionally spring wound toy vehicles. Dr. Benedict specifically testified as follows:

"Q. Well, you just said, I thought, that if you took *Wyrick* and *Miura* and put them together you could construct a bi-directional car.
A. That's correct, sir.
Q. And that is still your testimony?
A. Yes, sir. Majorette did it.
Q. And the Patent Office had both of these patents before them in the course of the examination of both of the Darda patents, did they not?
A. That's correct. Someone who understands how all of that goes together could take that and do that, sir."

[Trial Transcript, p. 368]

7. The *Bolsey* patent asserted by defendants is directed to a moving picture camera which uses a key to wind a spring [Trial Transcript, Benedict testimony, p. 386]. The *Bolsey* device discloses separate input and output mechanisms for respectively winding and releasing its spring [Tri-

al Transcript, Benedict testimony, pp. 388–389], while the input and output energy in the Darda invention occurs at the same place; namely, the rear wheels of the toy vehicle [Trial Transcript, Benedict testimony, p. 393].

8. Defendants have offered no evidence or proof that toy vehicles having bi-directionally wound spring motors were known prior to Mr. Darda's invention thereof. To the contrary, defendant Majorette (France) secured its own U.S.Pat. No. 4,332,104 [Plaintiffs' Exhibit 3] for a toy vehicle having a bi-directionally wound spring motor, which purports to be an improvement over the two patents in suit.

9. Defendants' technical expert Dr. Benedict, testified that he was unaware of any toy vehicles having a bi-directionally spring wound motor other than the Darda or Majorette products [Trial Transcript, pp. 364–365].

10. The Benedict testimony consisted of, for the most part, the presentation of charts showing only selected portions of the *Wyrick, Miura,* and *Bolsey* patents. Using a chart of the Darda invention as a guide, Dr. Benedict attempted to combine the charts of *Wyrick, Miura,* and *Bolsey* to produce a hindsight reconstruction of the Darda invention. The chart illustrating the *Bolsey* patent omitted the key wind mechanism [Trial Transcript, p. 306], although Dr. Benedict was apparently aware that one of the objects of the Darda invention was to eliminate a key wind mechanism which is difficult for children to manipulate [Trial Transcript, Benedict testimony, pp. 404–405].

11. Plaintiffs' expert witness Mr. Robert Brass, a toy designer, testified that even an attempt at hindsight reconstruction of the patents in suit by combining *Wyrick, Miura,* and *Bolsey* would require "tremendous redesign" of these references [Trial Transcript, Brass testimony, pp. 694–695 and Trial Transcript, Brass testimony, pp. 716–717], and any such combination would result in a "Rube Goldberg" type device [Trial Transcript, Brass testimony, p. 695]. The driving element on both the *Wyrick* and *Miura* patents is not the same as the wind-up element, and the winding element of the *Bolsey* patent is separate from the driving element [Trial Transcript, Brass testimony, p. 695].

12. The general nature of the bi-directional gear system illustrated by the *Bolsey* patent has been known for about five hundred (500) years [Trial Transcript, Brass testimony, p. 691]. The *Bolsey* patent itself has been publicly available since December 22, 1942, almost thirty (30) years prior to the date of the Darda inventions [Defendants' Exhibit 13]. Toy vehicles having uni-directional spring wound motors have also been known long prior to Mr. Darda's invention [Trial Transcript, Brass testimony, pp. 691–692; and *Wyrick* and *Miura* patents]. Yet, notwithstanding the availability of uni-directional toy vehicles and bi-directionally spring wound motors in other arts for long periods of time prior to Mr. Darda's invention, Mr. Darda was the first to develop a toy vehicle having a bi-directionally spring wound motor, or a bi-directionally spring wound motor particularly adapted for a mobile toy vehicle. Under cross-examination by defendants' counsel, Mr. Brass testified on this issue as follows:

"A. You know, this is irrelevant for a very simple thing.

The invention again is the application of that into a toy. I have had the advantage of designing toys and understand the implication of what's involved.

They must go together simply. They must be easy to manufacture, and they must last a long time. You cannot take the mechanisms described in *Bolsey* and one or two concepts that you pull out of another patent and say you have the definition of forward and winding.

Toy cars wound by springs have been done for years. Why hadn't somebody made that leap of fate?

Q. I want to ask you that specific question in a moment.

A. Because it is not a trivial jump."

[Trial Transcript, Brass testimony, pp. 731–732]

Defendants' counsel never did return to this line of cross-examination.

13. Defendants have presented no evidence to establish that the relevant art to which the two Darda patents pertain encompasses anything other than the toy design art. Likewise, defendants have presented no evidence to establish the level of ordinary skill in the toy design art at the time the inventions of the two patents in suit were made. Defendants' expert witness William Schuyler, Jr., did not offer any testimony as to the scope of the relevant art to which the patents in suit pertain, or to the level of ordinary skill in that art at the time the inventions were made. To the contrary, Mr. Schuyler conceded that he never fully studied the complete disclosures of any of the references asserted by the defendants [Trial Transcript, Schuyler testimony, p. 448].

14. Dr. Benedict, defendants' technical expert, owns no patents relating to toy vehicles [Trial Transcript, Benedict testimony, p. 359]. Dr. Benedict admitted that he is not knowledgeable in the design of bi-directionally spring wound toy vehicles. In referring to the two Darda patents in suit, Dr. Benedict testified:

"A. At this point in time, I don't think I'm as knowledgeable as the individual that did this and my level of skill is not that high in that area.

I have got higher skills in other areas, but in that one area, I could develop it knowing what I know now.

At this present time, if anything, it's about equivalent right now after all the studying I have done."

[Trial Transcript, Benedict testimony, p. 346]

15. Dr. Benedict also testified that he had no knowledge of the level of ordinary skill in the toy design art at the time the inventions of the Darda patents in suit were made.

"Q. One specific question; what in your opinion was the level of ordinary skill in the art pertaining to toy design in 1971?

A. I can't answer that, sir. I would assume based on the types of toys that are out there, that it was fairly high.

Q. Now, more specifically, what was the level of ordinary skill in the art pertaining to toy designs of bi-directionally wound toy vehicles in 1971?

A. I can't answer that, sir. I am not knowledgeable."

[Trial Transcript, Benedict testimony, p. 365]

16. Dr. Benedict testified that the level of skill of the Darda inventions is fairly high. In referring to the models which were built by Helmut Darda [Plaintiffs' Exhibits 5-1 through 5-24], Dr. Benedict stated:

"A. The level of skill is fairly high in terms of how you put all these together and working out the geometry.

There are some fairly complex geometry within these and how they fit together and how the gears mesh and what the clearances are and which ones pivot and which ones go together. So the level of skill is still fairly high in that area."

[Trial Transcript, Benedict testimony, p. 340]

17. Still referring to Mr. Darda's models, Dr. Benedict testified:

"The level of skill required to design and build these and to invent them is not necessarily as high as my level of skill, at my educational level and my training, but it's higher than my ability in this area in terms of seeing how these things go together and working them out and putting them together."

[Trial Transcript, Benedict testimony, p. 341]

In referring to the embodiments of the invention of the patents in suit, Dr. Benedict testified:

"My opinion is that someone has to have a fairly high degree of skill and capability to do that sort of thing.

What has been done with the Darda motor and the Darda patents is fairly sophisticated in terms of mechanically how it is done."

[Trial Transcript, Benedict testimony, p. 335]

18. Contrary to the testimony of Dr. Benedict, plaintiffs' presented the expert testimony of Mr. Robert Brass, a toy designer, who has designed hundreds of toys [Trial Transcript, p. 684], holds about 50 patents on toys [Trial Transcript, p. 684], and has licensed his toy patents to major United States toy manufacturers [Trial Transcript, p. 684]. Mr. Brass, who has designed toy vehicles [Trial Transcript, pp. 684–686], testified that a toy designer looks to other toys as a guide when designing new toys. In designing his own toy vehicles, Mr. Brass purchased every motorized toy vehicle that he could locate, spending the better of three or four months doing the same [Trial Transcript, p. 686].

19. Mr. Brass made his invention of the motorized toy market in 1980 or 1981 [Trial Transcript, pp. 686–687], at least ten (10) years after the date of the invention of the Darda patents in suit. During his investigation, Mr. Brass failed to locate any bi-directionally spring wound toy vehicles, other than the Darda toy [Trial Transcript, p. 687]. The state of the art of motorized toy vehicles at that date, based on Mr. Brass' investigation, was exemplified by pull-back vehicles which wound only in one direction [Trial Transcript, p. 687]. Compared to these motors, Mr. Brass characterized the Darda bi-directional motor as follows:

"I thought it was a jewel. It is a beautifully, elegantly done design."

[Trial Transcript, p. 688]

20. Defendants have failed to present any evidence establishing that the relevant art to which the patents in suit pertain encompasses anything other than the design of motorized toy vehicles, and defendants have failed to present evidence establishing the ordinary level of skill in the relevant art at the time the inventions of the patents in suit were made.

21. Defendants have asserted that independent claim 1 of each of the two patents in suit is invalid on the grounds of indefiniteness. The testimony of defendants' own expert patent witness, William Schuyler, Jr., establishes that neither of those two independent claims are indefinite [Trial Transcript, Schuyler testimony, p. 460].

22. Defendants allege that claim 6 of U.S.Pat. No. 3,812,933 and claim 21 of U.S. Pat. No. 3,812,933 are defective [Joint Pretrial Stipulation, p. 14, para. j]. Defendants have presented no evidence at trial in support of this defense.

23. Defendants allege that plaintiffs' attempt to enforce claims 6–12, 29 and 32–35 of U.S.Pat. No. 3,812,933 and claims 5, 7–10, 12–14, 18, 21 and 46–48 of U.S.Pat. No. 3,091,098 is without colorable basis [Joint Pretrial Stipulation, p. 14, para. k]. Defendants have failed to offer any evidence at trial supporting this alleged defense. Moreover, plaintiffs have not asserted these claims at trial.

**B. Conclusions of Law Re: Patent Validity**

1. Patents are presumed to be valid. 35 U.S.C. § 282. The presumption of patent validity is never weakened or destroyed. *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1534, 218 USPQ 871, 875 (Fed.Cir.1983); *ACS Hospital Systems, Inc. v. Montefiore Hospital*, 732 F.2d 1572, 1574–75, 221 USPQ 929, 930–31 (Fed.Cir. 1984).

2. The determination of non-obviousness of a patent is a question of law dependent upon certain factual determinations. *Graham v. Deere*, 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966). In order to determine the issue of obviousness, the scope and content of the relevant prior art to the subject matter of the patent must be determined, the level of ordinary skill in such relevant art at the time the invention was made must be ascertained, and the level of skill of the invention must be compared to the level of skill in the relevant art at the time the invention was made. *Graham, supra.*

**1132**

3. The burden of establishing obviousness of a patent is on the party attacking the validity of that patent. Patent invalidity must be established by clear and convincing evidence. *Railroad Dynamics, Inc. v. A. Stucki Co.,* 727 F.2d 1506, 220 USPQ 929 (Fed.Cir.1984), *cert. denied,* — U.S. —, 105 S.Ct. 220, 83 L.Ed.2d 150 (1984); *Hycor Corporation v. The Schlueter Company,* 740 F.2d 1529, 222 USPQ 553 (Fed.Cir.1984). It is the burden of defendants, who attack the validity of the patents, to establish the relevant art to which the patents pertain, and the level of skill in that relevant art at the time the inventions were made. Failure by the defendants to establish these facts cannot support a holding of invalidity of the patent. *Universal Athletic Sales Co. v. American Gym, Recreational & Athletic Equipment,* 546 F.2d 530, 192 USPQ 193 (3rd Cir.1976), *cert. denied,* 430 U.S. 984, 97 S.Ct. 1681, 52 L.Ed.2d 378 (1977), (wherein a holding of patent invalidity was reversed on the grounds that the defendants failed to adequately define the scope and content of the relevant prior art and failed to present evidence of the level of ordinary skill in the art at the time the invention was made).

4. The presumption of patent validity is strengthened where the Patent and Trademark Office has considered the most relevant prior art during the examination of the patent in question. *Hughes Aircraft v. United States,* 717 F.2d 1351, 219 USPQ 473 (Fed.Cir.1983); *Stewart-Warner Corp. v. City of Pontiac, Michigan,* 717 F.2d 269, 219 USPQ 1162 (6th Cir.1983).

5. It is improper to attempt to establish obviousness of a patent by using the patent in suit as a guide to combining different prior art references to achieve the result of the claims of the patent in suit. *Orthopedic Equipment Co., Inc. v. United States,* 702 F.2d 1005, 217 USPQ 193 (Fed. Cir.1983). Hindsight reconstruction of a patent, using the patent itself as a guide, is improper because it fails to consider the subject matter of the invention "as a whole" and fails to consider the invention as of the date at which the invention was made. *Orthopedic Equipment Co., Inc., supra; ACS Hospital Systems, Inc., supra.*

6. As the Court in *Orthopedic Equipment Co., Inc., supra,* at 1012, stated:

> It is wrong to use the patent in suit as a guide through the maze of prior art references, combining the right references in the right way so as to achieve the result of the claims in suit. Monday morning quarterbacking is quite improper when resolving the question of nonobviousness in a court of law.

7. It is irrelevant to the issue of patentability that all elements of the claimed combination may be individually found in different prior art references. Instead, what matters in making the determination of nonobviousness of patent claims is whether a person of ordinary skill in the art, having all the teachings of the references before him, is able to produce the structure defined by the claim. *Orthopedic Equipment Co., Inc., supra,* at 1013. In order to establish obviousness then, defendants must prove that the different prior art references suggest combination of the prior art in such a manner as to render the patented invention obvious, without reference to the patents themselves as a guide to combining the references. *Orthopedic Equipment Co., Inc., supra; ACS Hospital Systems, Inc., supra.* Moreover, prior art references must suggest the desirability of making the claimed combination in order to defeat the patent. *Fromson v. Advance Offset Plate, Inc.,* 755 F.2d 1549, 225 USPQ 26 (Fed.Cir.1985).

8. In determining non-obviousness, the claimed subject matter must be considered as a whole. The use of one element of a claimed combination in different applications not relevant to the subject matter of the patent claims in issue will not defeat the patentability of the claim. *ACS Hospital Systems, Inc., supra.*

## II. INEQUITABLE CONDUCT

### A. *Findings of Fact Re: Alleged Inequitable Conduct*

1. Defendants contend that U.S.Pat. No. 3,981,098 is invalid as a result of fraud

for failing to cite the *Bolsey* patent to the U.S. Patent Examiner during the time when the application resulting in that patent was pending before the Patent and Trademark Office [Joint Pretrial Stipulation, p. 13, para. h]. Defendants concede and the testimony reflects that there is no issue of alleged fraud relating to the earlier issued patent in suit, U.S.Pat. No. 3,812,-933, which issued prior to plaintiffs' knowledge of the *Bolsey* patent [Trial Transcript, Schuyler testimony, p. 466; Trial Transcript, Westphal testimony, p. 825].

2. The existence of the *Bolsey* patent first became known to Mr. Westphal, Helmut Darda's German patent attorney, on or about October 14, 1974 [Pretrial Stipulation, p. 6, para. k; Trial Transcript, Westphal testimony, p. 762]. The *Bolsey* patent was cited against one of six German patent applications corresponding to the U.S. patents in suit [Trial Transcript, Westphal testimony, p. 762].

3. After learning of the *Bolsey* patent, Mr. Westphal considered both the issued claims of U.S.Pat. No. 3,812,933 and the claims pending in the application which resulted in U.S.Pat. No. 3,981,098 [Trial Transcript, Westphal testimony, p. 764]. Mr. Westphal concluded that the *Bolsey* patent did not affect the validity of the claims of the patent or the pending application because the *Bolsey* patent related to a camera having a key wind mechanism, whereas the Darda invention was directed to a toy which sought to eliminate the use of a key wind mechanism [Trial Transcript, Westphal testimony, pp. 764–765].

4. Mr. Westphal was familiar with the U.S. requirement of advising the Patent Examiner of all relevant and material information, and would have cited the *Bolsey* patent if he believed it to be relevant or material to the pending application [Trial Transcript, Westphal testimony, p. 765]. Although the claims of the German application against which *Bolsey* was cited were amended in view of *Bolsey*, Mr. Westphal concluded that no such amendments were required with respect to the U.S. claims which were more limited than the German

claims and were already directed to mobile toy vehicles [Trial Transcript, Westphal testimony, pp. 824–825].

5. Majorette (France) owns U.S.Pat. No. 4,332,104 [Plaintiffs' Exhibit 3] which is directed to a toy vehicle having a bi-directionally wound spring motor. This patent purports to be an improvement over the two Darda patents in suit.

6. Majorette (France) conducted a search of the Darda bi-directional toy patents in 1975 and from that search learned of the existence of the *Bolsey* patent [Trial Transcript, Karmin testimony, pp. 494, 498].

7. Although Majorette (France) knew of the existence of the *Bolsey* patent prior to and during the prosecution of the U.S. patent application, it failed to cite this patent to the U.S.Patent Examiner on the grounds that the *Bolsey* patent was not relevant to the Majorette invention [Trial Transcript, Karmin testimony, pp. 556–558].

8. In view of the non-action taken by Majorette (France) with respect to the *Bolsey* patent regarding its own U.S. patent application, the opinion of the Majorette French attorney, Roger Karmin, supports the position of Mr. Westphal with respect to the Darda patents; namely, that the *Bolsey* patent is neither relevant nor material to the Darda patents or the Majorette patent.

9. Mr. Westphal's position with regard to the lack of relevance or materiality of the *Bolsey* patent is supported by the testimony of plaintiffs' expert Robert Brass, who testified that the gear system disclosed by the *Bolsey* patent could not be used for a motor for bi-directionally spring wound mobile toy vehicles [Trial Transcript, Brass testimony, pp. 716–717].

10. The testimony of Mr. Helmut Darda, the inventor of the two patents in suit, also concludes that the gear system of *Bolsey* could not be used in a mobile toy vehicle [Trial Transcript, Darda testimony, pp. 180–181].

11. Although the applications resulting in the two Darda patents in suit were

searched at two separate times by two different Patent Examiners in the class and sub-class of the *Bolsey* patent, neither of these two Patent Examiners cited the *Bolsey* patent as being relevant or material to the inventions claimed in the two patents in suit [Trial Transcript, Schuyler testimony, pp. 441–445].

12. Mr. Schuyler, Defendants' patent expert, acknowledged that prior art cited to a Patent Examiner by an attorney is based on the judgment of the patent attorney as to the relevance and materiality of such prior art [Trial Transcript, Schuyler testimony, pp. 438–439].

### B. *Conclusions of Law Re: Alleged Inequitable Conduct*

■ 1. Inequitable conduct, sufficient to invalidate or render a patent unenforceable, requires clear and convincing evidence of deliberate withholding of material facts or information. At the very least, gross negligence or recklessness must be established. Mere negligence or good faith judgment constitutes a defense and does not, in itself, render a patent invalid or unenforceable. The party asserting fraud has the burden of proof on this issue. *Orthopedic Equipment Co. v. All Orthopedic Appliances*, 707 F.2d 1376, 217 USPQ 1281 (Fed.Cir.1983); *Kansas Jack, Inc. v. Kuhn, et al.*, 719 F.2d 1144, 219 USPQ 857 (Fed. Cir.1983); *American Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 220 USPQ 763 (Fed.Cir.1984), *cert. denied*, —— U.S. ——, 105 S.Ct. 95, 83 L.Ed.2d 41 (1984); *Driscoll v. Cebalo, et al.*, 731 F.2d 878, 221 USPQ 745 (Fed.Cir.1984); *Hycor Corp. v. The Schlueter Co.*, 740 F.2d 1529, 222 USPQ 553 (Fed.Cir.1984); *J.P. Stevens & Co. v. Lex Tex, Ltd.*, 747 F.2d 1553, 223 USPQ 1089 (Fed.Cir.1984).

■ 2. Inequitable conduct may be established where the information withheld from the Patent Office was highly material and the party withholding the information should have reasonably known of its materiality. *Argus Chemical Corp. v. Fibre Glass Evercoat Co., Inc.*, 759 F.2d 10, 225 USPQ 1100 (Fed.Cir.1985).

3. The actions of Majorette (France) with respect to its U.S. patent application illustrates that Majorette (France) itself did not consider the *Bolsey* patent to be either relevant or material to the subject matter of the patents in suit.

## III. CLAIM INTERPRETATION

### A. *Findings of Fact Re: Claim Interpretation*

1. The claims of U.S.Pat. No. 3,981,098 are clearly limited to a toy vehicle [Plaintiffs' Exhibit 2]. The claims of U.S.Pat. No. 3,812,933 are directed to "A drive, particularly for mobile toys ..." [Plaintiffs' Exhibit 1].

2. The specification of the '933 patent, like that of the '098 patent, fails to disclose that the subject invention is useful for anything other than for toy vehicles. [Trial Transcript, Westphal testimony, p. 769; Plaintiffs' Exhibits 1 and 2].

3. The motor drive disclosed and claimed in U.S. Pat. No. 3,812,933 has never been used in anything other than a toy vehicle [Trial Transcript, Westphal testimony, p. 767].

4. The Darda motor has no contemplated use in anything other than a toy vehicle [Trial Transcript, Darda testimony, p. 181].

5. The language of claim 1 of U.S.Pat. No. 3,812,933 reciting "A drive, particularly for mobile toys ..." is based on a literal translation of a corresponding German claim prepared by Mr. Westphal. [Trial Transcript, Westphal testimony, pp. 766–767]. There was no intent by Mr. Westphal to claim anything other than a motor for a toy vehicle [Trial Transcript, Westphal testimony, p. 767]. In Mr. Westphal's opinion, the motor of the '933 patent is only suitable for use in a mobile toy [Trial Transcript, Westphal testimony, p. 767].

6. It was Mr. Westphal's decision to allow both of the two patents in suit to issue [Trial Transcript, Westphal testimony, p. 770]. This action, was based in part, upon the recommendations of U.S.Patent

counsel that the issuance of two patents would provide better protection against different classes of potential infringers using the motor for a toy vehicle [Trial Transcript, Westphal testimony, p. 770; Defendants' Exhibit 91].

7. Defendants' own patent expert, Mr. Schuyler, agreed that claims must be interpreted in a manner which sustains their validity [Trial Transcript, Schuyler testimony, p. 461].

8. Defendants have failed to meet their burden of establishing that claims 7 of each patent define an inoperable device. The language of each claim 7 requires that a second component, including two gear wheels, rotate in a predetermined direction to wind a spring. There is no limitation in either of claims 7 that both gear wheels must rotate in the *same* predetermined direction [Trial Transcript, Benedict testimony, pp. 406–407; Schuyler testimony, pp. 458–459]. Defendants' technical expert, Dr. Benedict, conceded that claim 7 of each of the patents in suit would define operable devices if each of the gear wheels rotated in a different predetermined direction [Trial Transcript, Benedict testimony, pp. 370–374].

9. Claim 7 of each patent in suit was independently searched by a different Patent Examiner. Neither of the two Examiners raised any objection to the operativeness of the structure defined by these claims [Trial Transcript, Schuyler testimony, p. 459].

B. *Conclusions of Law Re: Claim Interpretation*

1. Claim interpretation is a matter of law for the Court. *ACS Hospital Systems, Inc. v. Montefiore Hospital,* 732 F.2d 1572, 221 USPQ 929 (Fed.Cir.1984). However, underlying factual issues may also be present in the process of claim interpretation. *Weidman Metal Masters Co. v. Glass Master Corp.,* 623 F.2d 1024, 207 USPQ 101 (5th Cir.1980), *cert. denied,* 450 U.S. 982, 101 S.Ct. 1519, 67 L.Ed.2d 818 (1981).

2. Claims must be read and construed in the light of the specification and prosecution history of the subject patent. Claims must be construed, where possible, in a manner as to sustain their validity. *ACS Hospital Systems, Inc., supra; Carman Industries, Inc. v. Wahl,* 724 F.2d 932, 220 USPQ 481 (Fed.Cir.1983).

3. The claims of U.S.Pat. No. 3,812,933 should be construed as being limited to a motor for mobile toy vehicles in light of the prosecution history of that patent, the file wrapper and specification of that patent, Mr. Westphal's intent in drafting that claim language, and the testimony that there was never any intent to use the motor, and the motor has never been used, for anything other than a toy vehicle.

4. Because defendants assert that claim 7 is invalid, it is defendants' burden to prove that these claims are invalid by clear and convincing evidence. *See, Railroad Dynamics, Inc. v. A. Stucki Co.,* 727 F.2d 1506, 220 USPQ 929 (Fed.Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 220, 83 L.Ed.2d 150 (1984); *Hycor Corp. v. Schlueter Co.,* 740 F.2d 1529, 222 USPQ 553 (Fed.Cir.1984). Defendants have failed to meet this burden of proof because they have failed to establish that claims 7 of each of the two patents in suit cannot be reasonably construed to define an operative device. The interpretation of claims 7 offered by defendants to render the claims inoperative implies language not found in the claims and is contrary to the well established law that claims are to be interpreted in a manner sustaining validity. *ACS Hospital Systems, supra; Carman Industries, supra.*

IV. INFRINGEMENT

A. *Findings of Fact Re: Infringement*

1. There are no triable issues of fact or law concerning infringement. Plaintiff Helmut Darda owns U.S.Pat. Nos. 3,981,-098 and 3,812,933 [Joint Pretrial Stipulation, p. 6, para. j]. Defendants Majorette (France) and Majorette (U.S.) admit infringement of claims 1–5 of U.S.Pat. No.

3,812,933 and claims 1–4 and 6 of U.S.Pat. No. 3,981,098 [Joint Pretrial Stipulation, p. 5, para. f].

2. Plaintiffs have relied upon said admissions of infringement by defendants Majorette (France) and Majorette (U.S.) and have presented no evidence at trial of infringement of any of the other claims of either of the two patents in suit.

3. Helmut Darda has testified that the toy vehicles sold .by Darda (U.S.) operate along the principles of the two patents in suit [Trial Transcript, Darda testimony, pp. 208 and 210–211].

B. *Conclusions of Law Re: Infringement*

 1. Patent infringement is determined by a comparison of the claims of the patent with the accused device of the infringer. Infringement is not determined by a comparison between the commercial product sold by the parties. *Amstar Corp. v. Envirotech Corp.*, 730 F.2d 1476, 221 USPQ 649 (Fed.Cir.1984); *ACS Hospital Systems, Inc. v. Montefiore Hospital*, 732 F.2d 1572, 221 USPQ 929 (Fed.Cir.1984).

 2. The claims of a patent are not limited to the preferred embodiments of the invention disclosed and described in the specification of the patent. The scope of protection afforded by patent claims may be broader than the specific embodiments disclosed in the specification and illustrated in the drawings. *AB Iro v. Otex, Inc.*, 566 F.Supp. 419, 220 USPQ 239 (D.S. C.1983). *See also, General Electric Co. v. United States*, 206 USPQ 260 (Ct.Cl., Tr. Div.1979), aff'd on other grounds, 228 Ct.Cl. 192, 654 F.2d 55, 211 USPQ 687 (1981).

V. WILLFUL INFRINGEMENT, TREBLE DAMAGES, AND ATTORNEYS' FEES

A. *Findings of Fact*

1. Defendant Majorette (France) was aware of the existence of the two Darda patents in suit at least as early as September 30, 1980 [Joint Pretrial Stipulation, p. 6,

para. 1], more than two years prior to the commencement of the present action.

2. Majorette (France) was aware of Darda's foreign patent rights since as early as 1975, when its French patent counsel, under its direction, conducted a search for the Darda German patents [Trial Transcript, Karmin testimony, pp. 493–494].

3. Notwithstanding the knowledge by Majorette (France) of the U.S. and foreign patent rights of Darda, Majorette (France) took no steps to obtain an opinion of U.S. patent counsel regarding the two Darda patents in suit until after the present action was commenced [Trial Transcript, Karmin testimony, pp. 570–575].

4. Majorette (France) first sought an opinion from U.S. patent counsel only after the present litigation was commenced. It was advised by U.S. patent counsel that its motorized product infringed at least some of the claims of both of the Darda patents in suit [Trial Transcript, Karmin testimony, p. 571].

5. At no time prior to the trial of this lawsuit has Majorette (France) or Majorette (U.S.) taken any steps to avoid the admitted infringement of the two Darda patents in suit.

B. *Conclusions of Law*

 1. Once a potential infringer has actual notice of another's patent rights, he has an affirmative duty to exercise due care to determine whether or not he is infringing. Such an affirmative duty usually includes the duty to seek and obtain competent legal advice from counsel *before* the initiation of any possible infringing activity. *Ralston Purina Co. v. Far-Mar-Co.*, 772 F.2d 1570, 227 USPQ 177 (Fed.Cir.1985); *Central Soya Co. v. Geo A. Harmel & Co.*, 723 F.2d 1573, 220 USPQ 490 (Fed.Cir.1983). In *CPG Products Corp. v. Pegasus Luggage, Inc.*, 776 F.2d 1007, 227 USPQ 497 (Fed.Cir.1985), the Court reversed and remanded that portion of the district court's holding which found no willful infringement where the defend-

ant had prior notice of infringement and took no steps to avoid it.

2. Willful infringement renders a case an exceptional case pursuant to 35 U.S.C. §§ 284, 285 entitling the prevailing patentee, in the Court's discretion, to an award of reasonable attorneys' fees and treble damages. *Central Soya Co., Inc., supra.* The instant case, being such an exceptional case, warrants the imposition of attorneys' fees and treble damages against defendants.

## VI. MISCELLANEOUS DEFENSES ASSERTED BY DEFENDANTS

### A. *Mixed Findings of Fact and Conclusions of Law*

1. Defendants contend that plaintiffs are guilty of laches for failing to bring the present infringement action in a timely manner [Joint Pretrial Stipulation, p. 13, para. f]. Defendants have failed to rebut the testimony of Alan Hess that this action was commenced by him within three months after learning of the infringement [Trial Transcript, Hess testimony, pp. 65–66]. This time period is insufficient to establish the defense of laches, which requires a six-year period of inaction by a plaintiff after learning of the infringement. *Leinoff v. Louis Milona & Sons, Inc.,* 726 F.2d 734, 220 USPQ 845 (Fed.Cir.1984); *Naxon Telesign Corp. v. Bunker Ramo Corp.,* 686 F.2d 1258, 216 USPQ 658 (7th Cir.1982).

2. Defendants allege that plaintiffs have failed to place the proper statutory patent notice required by 35 U.S.C. § 287 on all products manufactured and sold in the United States under the patents in suit [Joint Pretrial Stipulation, p. 13, para. g]. Defendants have failed to present any evidence establishing this defense. Moreover, defendant Majorette (France) concedes that it has had actual notice of the two Darda patents in suit at least as early as September 30, 1980 [Joint Pretrial Stipulation, p. 6, para. 1].

3. Defendants contend that the applications resulting in the patents in suit were improperly executed by the applicant Helmut Darda. Defendants have offered no evidence in rebuttal to Mr. Westphal's testimony that the subject patent applications were properly executed by Mr. Darda in his presence [Trial Transcript, Westphal testimony, pp. 760–762].

4. Defendants contend that Helmut Darda is not the true or first inventor of the two patents in suit. Defendants have presented no evidence in support of this alleged defense.

5. Defendants contend that plaintiffs have attempted to enforce claims 6–12, 29 and 32–35 of U.S.Pat. No. 3,812,933 and claims 5, 7–10, 12–14, 18, 21 and 46–48 of U.S.Pat. No. 3,981,098 without colorable basis [Joint Pretrial Stipulation, p. 14, para. k]. Defendants have failed to offer any evidence at trial supporting this defense. Plaintiffs have not asserted any of these claims at trial. At trial, plaintiffs restricted their case to infringement of claims 1–5 of the '933 patent, and claims 1–4 and 6 of the '098 patent. These claims cite a device enabling the bi-directional winding of a spring for use in a toy vehicle ('933), and a toy vehicle employing such a device ('098).

6. Defendants argue in their post-trial memorandum that plaintiffs' failure to place the two subject patents into evidence precludes plaintiffs from recovering on an infringement claim. Defendants have cited no case law or other authority in support of this argument. Plaintiffs have placed the file wrappers for both patents into evidence [Plaintiffs' Exhibits 1 and 2]. These file wrappers detail the entire history of the procurement of the two patents in suit. Moreover, in presenting their case, defendants have introduced, and the Court has admitted, the two patents in suit into evidence [Defendants Exhibits 2 and 3]. Therefore, the Court discounts defendants' novel argument. Since the two patents in suit are in evidence in any event, Plaintiffs' claim for infringement is not precluded.

### B. *Findings of Fact*

1. Plaintiffs have not presented any evidence of actual damages such as lost profits.

2. However, plaintiffs have shown that Helmut Darda received a royalty of about 5–8% (five to eight percent) on the sales made to Darda (U.S.) [Trial Transcript, Hess testimony, pp. 69–70].

3. Darda (U.S.) operated under a license of the two patents in suit [Trial Transcript, Hess testimony, p. 70], although the license was not reduced to writing until the time Mr. Darda sold his interest in Darda (U.S.) [Trial Transcript, Hess testimony, p. 71].

4. The Darda product has been licensed by Darda (U.S.) in foreign countries for a royalty in a range or 5–8% (five to eight percent) [Trial Transcript, Hess testimony, p. 78].

5. Majorette (U.S.) has stipulated to the total sales figures for their infringing product sold in the U.S. for the years 1980–1984 [Plaintiffs' Exhibit 7]. These figures reflect the separate sales of the infringing toy cars and four types of race tracks.

6. Mr. Robert Brass, plaintiffs' expert witness, who has licensed more than 50 toys and games, has testified that in his opinion, a reasonable royalty for the license of toys (which have been invented independently and not in conjunction with or at the behest of a toy company) would equal 5% (five percent).

7. The Court finds that a reasonable royalty recoverable by the patentee in the instant action would total 5% (five percent) of the defendants' total sales for the infringing product.

C. *Conclusions of Law*

1. Upon finding for the claimant, the Court shall award the claimant damages adequate to compensate for the infringement but no less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the Court. 35 U.S.C. § 284.

▆ 2. When, as here, actual damages are not proved in an infringement action, plaintiffs are entitled to a reasonable royalty. *Hughes Tool Co. v. G.W. Murphy Industries, Inc.,* 491 F.2d 923, 180 USPQ 353 (5th Cir.1973).

▆ 3. An award of damages based on a reasonable royalty theory may be calculated as a percentage of the overall sales of the infringing item by the defendant. *CPG Products Corp. v. Pegasus Luggage, Inc.,* 221 USPQ 766 (S.D.Fla.1983), *aff'd in pertinent part,* 776 F.2d 1007, 227 USPQ 497 (Fed.Cir.1985); *Hughes Tool Co. v. G.W. Murphy Industries, Inc., supra.*

4. There is sufficient evidence of record to enable the Court to base an award of damages for infringement upon a reasonable royalty theory inasmuch as defendants' total sales figures for the infringing product have been admitted as Plaintiffs' Exhibit 7 and plaintiffs' expert has rendered an opinion as to what constitutes a reasonable royalty.

5. Because Helmut Darda, the patentee, receives a royalty for the sale of products covered by the patent in suit to Darda (U.S.) and pursuant to 35 U.S.C. § 284, plaintiff Helmut Darda is entitled to damages based on a reasonable royalty theory.

VII. STANDING OF DARDA (U.S.)

A. *Findings of Fact*

1. The present action was commenced by Mr. Alan Hess, the then-President of Darda (U.S.), without the prior authorization of Helmut Darda [Trial Transcript, Hess testimony, p. 61].

2. Mr. Hess believed Darda (U.S.) to be the exclusive licensee in the United States under the two patents in suit [Defendants' Exhibit 94, Hess Depo.Tr., pp. 85–88 & 147–150].

3. Helmut Darda was not an original party to this action but was ordered by the Court to join as a co-plaintiff in August of 1984. Mr. Darda complied with this order.

4. After the joinder of Mr. Darda to this action, defendant Majorette (U.S.) filed an amended answer and counterclaim reasserting its counterclaim for antitrust violations against only plaintiff Darda (U.S.), and not against plaintiff Helmut Darda. The Court denied defendants' motion made at trial to assert the antitrust counterclaim

against Helmut Darda [Trial Transcript, pp. 674, 677].

### B. *Conclusions of Law*

1. It is well established that an exclusive licensee under a patent may commence and prosecute an action for infringement of the patent in its own name. *Waterman v. MacKenzie,* 138 U.S. 252, 11 S.Ct. 334, 34 L.Ed. 923 (1891). Defendants argue that if any license existed between Darda (U.S.) and Helmut Darda, it was not exclusive and Darda (U.S.) therefore is not entitled to claim patent infringement and recover damages pursuant to the Second Circuit decision of *Overman Cushion Tire Co. v. Goodyear Tire & Rubber Co.,* 59 F.2d 998 (2d Cir.1932). That case specifically held that a licensee could not "share in the profits or damages, if any were obtained from the infringer" because the agreement between the patentee and the licensee did not so provide. The Court there found that the agreement did not constitute an exclusive license and further stated:

> In order that a licensee have a right to intervene, it must appear that the defendant has directly invaded that part of the patent right under which the licensee claims.

59 F.2d at 1000. The agreement at bar between Darda (U.S.) and Helmut Darda constitutes an exclusive license. Moreover, in the instant case, the Court has awarded monetary damages for infringement based upon a reasonable royalty theory only to plaintiff Helmut Darda and not to Darda (U.S.). The Court has enjoined defendants on both plaintiffs' behalf from further infringement. A licensee with a substantial interest in the outcome of a litigation has the right to remain as a co-plaintiff. *Colmol Co. v. Goodman Mfg. Co.,* 132 USPQ 126 (N.D.Ill.1961). Obviously, plaintiff Darda (U.S.), as the sole and exclusive vendor and distributor of the patented products in the United States, has a substantial interest in the instant suit's outcome since defendants' infringement encroaches upon its exclusive rights.

2. Even assuming *arguendo* that Darda (U.S.) was not the real party in interest at the time this action was commenced, the joinder of Helmut Darda, the patentee of the two patents in suit, has clearly rectified any alleged defect in the initial choice of the plaintiff. Rule 17(a) of the *Federal Rules of Civil Procedure* states, in pertinent part:

> "... No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest."

3. Defendant Majorette (U.S.) is estopped to deny that plaintiff Darda (U.S.) is a proper party to this action. It has asserted an antitrust counterclaim against only Darda (U.S.) and has failed to assert that counterclaim against Helmut Darda even after his joinder of this action.

### VIII. ANTITRUST MATTERS

#### A. *Findings of Fact*

1. The patents in suit are valid, therefore no antitrust counterclaim under The Sherman Act, 15 U.S.C. § 2, can lie, and the Court need go no further in considering the allegations of antitrust violations. However, in an abundance of caution, the Court makes the following alternative findings of fact and conclusions of law which presuppose a determination of patent invalidity.

2. Defendants have failed to meet their burden of proof that this action was commenced by either plaintiff with knowledge of invalidity of the patents in suit or with an intent to monopolize.

3. This action was commenced by Darda (U.S.) only after obtaining an opinion of counsel that infringement by the defendants existed [Trial Transcript, Hess testimony, pp. 63–64]. Majorette's infringe-

ment was the only motive for the commencement of this action [Trial Transcript, Hess testimony, p. 66]. Mr. Hess, the then-President of Darda (U.S.) had no reason to believe that either of the two patents in suit were invalid at the time the action was commenced [Trial Transcript, Hess testimony, p. 75].

4. Helmut Darda was not an original party to this action which was commenced only by Darda (U.S.) without the prior approval of Helmut Darda [Trial Transcript, Hess testimony, p. 61].

5. Defendants have failed to establish that either Helmut Darda or Klaus Westphal, had any knowledge that the patents in suit were invalid prior to the commencement of this action.

6. No antitrust cause of action has been asserted against plaintiff Helmut Darda [Trial Transcript, pp. 674, 677].

7. The allegations by defendants of enforcement of a fraudulently procured patent or enforcement of a patent known to be invalid are based on the knowledge of the *Bolsey* patent. Defendant Majorette (France) did not consider *Bolsey* to be sufficiently relevant to its own U.S. patent, which purports to be an improvement to the two Darda patents in suit, to cite *Bolsey* to the U.S. Patent Examiner [Trial Transcript, Karmin testimony, pp. 556–558].

8. Defendants have failed to adequately define the relevant product market. Although both Darda (U.S.) and Majorette (U.S.) sell products other than bi-directionally spring wound toy vehicles, defendants' expert witness Jane Zimmy could not explain why defendants originally defined the relevant product market as limited to toy vehicles having "patented, bi-directional" motors [Trial Transcript, Zimmy testimony, pp. 637–638]. Although uni-directional motorized toy vehicles might also be considered part of the relevant product market [Trial Transcript, Zimmy testimony, p. 631 and pp. 640–641], defendants provided no evidence of the market share of Darda (U.S.) in such an overall product market.

9. Majorette (U.S.) was not the only competitor of Darda (U.S.) in the U.S. market, but at the time this action was commenced, Darda (U.S.) considered many other companies to be its competitors [Trial Transcript, Hess testimony, pp. 75–76].

10. Defendant Majorette (U.S.) has submitted no evidence of damages alleged to result from the antitrust violations. Although Majorette (U.S.) contends that its attorneys' fees, which are allegedly in excess of Five Hundred Thousand ($500,000) Dollars, constitute its damages, there has been no evidence submitted that the Five Hundred Thousand ($500,000) Dollar figure is exclusively limited to the U.S. action, or that either Majorette (U.S.) or Majorette (France) has actually paid that amount [Trial Transcript, Karmin testimony, p. 597].

### B. *Conclusions of Law*

1. Antitrust liability based on patent conduct presupposes patent invalidity. The patents in suit are valid. However, in an abundance of caution, the Court renders *alternatively*, the following conclusions of law.

2. Antitrust liability based on patent conduct requires a specific intent to control prices or destroy competition with respect to commerce through the use or procurement of a patent which is known to be invalid. *Carpet Seaming Tape Licensing Corp. v. Best Seam, Inc., et. al.*, 616 F.2d 1133, 206 USPQ 213 (9th Cir.1980); *Carpet Seaming Tape Licensing Corp. v. Best Seam, Inc., et al.*, 694 F.2d 570, 216 USPQ 873 (9th Cir.1982), *cert. denied*, 464 U.S. 818, 104 S.Ct. 78, 78 L.Ed.2d 89 (1983).

3. An alleged antitrust violation based on fraudulent patent procurement requires a showing that the party seeking to enforce the patent had actual knowledge that the patent sought to be enforced was invalid prior to the commencement of the action. *Walker Process Equipment, Inc. v. Food Machinery & Chemical Corp.*, 382 U.S. 172, 86 S.Ct. 347, 15 L.Ed.2d 247 (1965). Antitrust liability based on alleged fraudulent patent pro-

curement requires a specific intent to monopolize. An intent evi᠎ ᠎nced by gross negligence or even recklessness is insufficient to establish antitrust liability, which must be proven by clear and convincing evidence. *American Hoist & Derrick Co. v. Sowa & Sons, Inc.,* 725 F.2d 1350, 220 USPQ 763 (Fed.Cir.1984), —— U.S. ——, 105 S.Ct. 95, 83 L.Ed.2d 41 (1984).

■ 4. Antitrust liability based on enforcement of a patent validly procured but subsequently known to be invalid, requires proof that the patentee had actual knowledge of patent invalidity prior to the enforcement of the patent. *See, Handgards, Inc. v. Ethicon, Inc.,* 601 F.2d 986, 202 USPQ 342 (9th Cir.1979), *cert. denied,* 444 U.S. 1025, 100 S.Ct. 688, 62 L.Ed.2d 659 (1980).

■ 5. Antitrust allegations are not lightly sustained, *American Hoist & Derrick Co., supra,* and the burden of proof on all material elements of an antitrust claim rests with the party asserting the claim.

■ 6. The party asserting the antitrust claim has the burden of proving the relevant product market and that the alleged violator possessed sufficient power in that market to present a dangerous probability of monopolization. The definition of the relevant product market is a question for the trier of fact whose findings will not be set aside unless clearly erroneous. *International Boxing Club, Inc. v. United States,* 358 U.S. 242, 79 S.Ct. 245, 3 L.Ed.2d 270 (1959); *United States v. E.I. DuPont de Nemours & Co.,* 351 U.S. 377, 76 S.Ct. 994, 100 L.Ed. 1264 (1956).

■ 7. Defendants have failed to meet their burden of proof with respect to all aspects of their alleged antitrust counterclaim. They have presented no evidence that either of the plaintiffs had any knowledge that the patents in suit were invalid prior to the commencement of this action. In fact, they have not presented evidence that plaintiffs commenced this action for any motive other than to stop the admitted infringement by Majorette. There has been no showing that plaintiffs possessed

the specific intent as required under the case law. Moreover, defendants have failed to adequately define the relevant product market or present any evidence as to the market share of Darda (U.S.) in a properly defined relevant product market. Finally, defendants have failed to prove any alleged damages.

## IX. SUMMARY AND RELIEF

In summary, the proof presented at trial compels this Court to find for the plaintiffs on their main claim of patent infringement and against the defendants on their counterclaim which seeks a declaration of patent invalidity. Defendants maintain that the existence of the *Bolsey* patent renders the two patents in suit invalid for obviousness. However, the evidence demonstrates that the *Bolsey* device, which was patented in 1942, is directed to a moving picture camera operable by a key. Defendants have not offered any evidence that toy vehicles having bi-directionally wound spring motors were known prior to plaintiff Helmut Darda's invention thereof. Further, there is no proof of inequitable conduct by plaintiffs. The evidence shows that plaintiffs and their counsel believed correctly and in good faith that the *Bolsey* patent was not relevant to the two patents in suit, since the two U.S. patents were specifically limited to a toy vehicle which eliminated the use of a key wind-up mechanism. The Court is further persuaded that the claim interpretation advanced by plaintiffs is the correct one. The subject invention is limited to a bi-directionally spring wound motor in a toy vehicle. Reading all claims in a manner which would sustain their validity, the Court finds that claim 7 is valid and that the limitation which mandates that the two gear wheels must be rotatable in "a predetermined" direction does not mean that the two wheels must rotate in the *same* direction. Accordingly, the claims are good and valid.

Infringement has been admitted by defendants and willful and deliberate infringement of the two patents in suit has been proven by plaintiffs. It has been

shown that defendants were aware of the existence of the two Darda patents in suit as early as September 30, 1980. Further, the evidence demonstrates that Majorette took no steps to secure the opinion of U.S. patent counsel prior to the commencement of the instant lawsuit. Said conduct constitutes willful infringement warranting the imposition of treble damages as provided by law. Although defendants have raised several affirmative defenses, the evidence does not sustain any of them. There has been *no* proof that:

1) laches should apply to bar the instant lawsuit;

2) plaintiffs failed to place the proper statutory patent notices on their products;

3) plaintiffs did not properly execute the patent applications;

4) plaintiff Helmut Darda is not the true inventor of the patents;

5) plaintiffs have attempted to enforce claims without a colorable basis; or that

6) plaintiffs' failure to place the patents into evidence precludes recovery for infringement.

Not one of these defenses has been established or proved. Therefore, the Court discounts each and every one and accordingly, finds for the plaintiffs on the main claim of infringement. Moreover, although actual damages were not proved by plaintiffs, there is enough evidence in the record to enable the Court to award damages based on a reasonable royalty theory.

As to the issue of standing, the Court concludes that plaintiff Darda (U.S.) was the exclusive licensee of Helmut Darda and as such, is a proper party plaintiff in the instant action. Defendants cannot prevail on the issue of standing in any event since their own actions in asserting a counterclaim against plaintiff Darda (U.S.) estops them from arguing the issue. Finally, inasmuch as the Court has declared the two U.S. patents in suit to be valid, there is no liability under the antitrust counterclaim against plaintiff Darda (U.S.). However, even if the patents were invalid, there would still be no recovery under the anti-trust counterclaim because proof was insufficient on several key issues such as specific intent to control the relevant market and destroy the competition.

For all these reasons, the Court hereby finds for the plaintiffs and against the defendants. More specifically, the Court hereby declares that plaintiff Helmut Darda is the lawful owner of the two patents in suit and further declares that the two patents in suit, namely, U.S. Letters Patent Nos. 3,812,933 and 3,981,098, are good and valid in law. Plaintiff Helmut Darda shall recover a reasonable royalty for defendants' infringement thereto. The reasonable royalty shall equal 5% of the amount of defendants' total sales of the infringing products for the years 1980 through 1984 as reflected in Plaintiffs' Exhibit 7. Defendants' infringement, being deliberate and willful, mandates the imposition of treble damages.

In addition to the damages awarded under a reasonable royalty theory to plaintiff Helmut Darda, an injunction is hereby issued on behalf of both plaintiffs enjoining defendants Majorette (U.S.) and Majorette (France), their officers, agents, servants, employees and those persons in active concert or participation with either or both defendants, from further infringement of U.S. Letters Patent Nos. 3,812,933 and 3,981,098.

Finally, the Court finds that the defendants' willful and deliberate infringement constitutes an "exceptional" case warranting an award of attorneys' fees to both prevailing plaintiffs, Helmut Darda and Darda (U.S.), pursuant to 35 U.S.C. §§ 284 and 285. Costs and expenses are also awarded to plaintiffs. The relief hereinabove outlined shall be further delineated and presented in a final judgment to be entered in accordance herewith on this day.